Commonwealth *v.* Bayuk Cigars, Inc., Appellant.

Argued May 25, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Jerome J. Rothschild,* of *Fox, Rothschild, O'Brien & Frankel,* with him *James J. Dougherty* and *John R. Scholl,* for appellant.

*Frank A. Sinon,* Deputy Attorney General, with him *Claude T. Reno,* Attorney General, for appellee.

Opinion by Mr. Justice Linn, June 29, 1942:

Bayuk Cigars, Incorporated, a Maryland Corporation, engaged in manufacturing and selling cigars and tobacco products in Philadelphia, Pennsylvania, transacting the principal part of its business in Pennsylvania, filed its excise tax return for the year 1935 under the Corporate Net Income Tax Act of May 16, 1935, P. L. 208, 72 PS section 3420(a) et seq. The taxing officers made an assessment. The corporation applied to the Board of Finance and Revenue for resettlement on the ground of erroneous application of the statute. On the refusal of the petition, the corporation appealed to the common pleas where the case was tried without a jury pursuant to the Act of April 22, 1874, P. L. 109, 12 PS section 688 et seq. Exceptions to the adjudication against the corporation were filed and considered by the court in banc from whose decision dismissing the exceptions the corporation appeals.

In appellant's brief five points were argued but, at the oral argument, two were withdrawn,[1] leaving for review, three contentions, two of them challenging ingredients used in the numerators in the apportionment fractions and the third complaining of the allowance of the Attorney General's commission.[2]

The Corporate Net Income Tax Act was considered in *Turco Paint & Varnish Co. v. Kalodner et al.*, 320 Pa.

---

[1] The propositions withdrawn from consideration are thus stated in appellant's brief: "4. The action of the taxing officials, in allocating to Pennsylvania, as a measure of Pennsylvania business, gross, receipts realized from sales in interstate commerce, is a violation of Article 1, Section 8, Sub-section 3 of the United States Constitution.

"5. Does the inclusion in the numerator of the tangible property fraction of the value of imported tobacco in bonded warehouses (duty unpaid) violate Section 10 of Article 1 of the Constitution of the United States and the Acts of Congress thereunder?"

[2] No oral argument was presented on this point; counsel for appellant stated he relied on the argument in *Commonwealth v. Budd Realty Corporation*, this day filed, 345 Pa. 343, 28 A.2d 132, raising the same point.

421, 184 A. 37; *Commonwealth v. Columbia Gas & Electric Corporation,* 336 Pa. 209, 8 A.2d 404, and in an opinion this day filed in *Commonwealth v. Warner Brothers Theatres Inc.,* 345 Pa. 270. It provides for a State excise tax payable for the privilege of doing business in this Commonwealth.[3] In appellant's brief it is properly said: "The intention of the Legislature, in the case of corporations doing business both within and without the State, is to levy a tax on the amount of income 'attributed to business carried on within the Commonwealth', 1935 P. L. 208, Sec. 2. To determine the amount of net income 'attributed to business carried on within the Commonwealth', the Act provides a formula, as follows:

"1. Gains realized from the sales of capital assets or tangible personal property situated in the State are allotted to the Commonwealth. [No question arises under this provision.]

"2. Of the remainder of the net income the portion attributable 'to business carried on within the Commonwealth' is to be determined by the use of three fractions.

"The first fraction (tangible property fraction) is composed of the ratio of tangible property in the State to tangible property everywhere. [No question arises under this provision.] The second fraction (wage fraction) is composed of the ratio of payroll in the State to payroll everywhere. The third fraction (gross receipts fraction) is composed of the ratio of gross receipts in the State to gross receipts everywhere.

"A third of the net income of the corporation is multiplied by each of these fractions and the results added together establish the net income which is to be 'attributed to business carried on within the Commonwealth.' "

---

[3] The Act of 1935 provides that "Every corporation shall be subject to, and shall pay for the privilege of doing business in this Commonwealth, a State excise tax at a rate of six per centum per annum upon each dollar of net income of such corporation." Section 3, 72 PS section 3420c, since amended.

Appellant concedes that the statutory method of ascertaining the net income assignable to Pennsylvania for the purpose of measuring the tax is reasonable, but challenges the construction of the Act as applied to the facts. Of the three ingredients of the apportionment formula, property, payroll and sales, we are required now to deal only with the elements represented by payroll and sales, particularly paragraphs (c) (2) and (c) (3) of section 2.[4]

---

[4] "2 . . . (c) The remainder of such net income shall be divided into three equal parts. . . .

"(2) Of one-third, such portion shall be attributed to business carried on within the Commonwealth, as shall be found by multiplying said one-third by a fraction, whose numerator is the expenditure[s] of the corporation for wages, salaries, commissions and other compensation to its employes, and assignable to this Commonwealth as hereinafter provided, and whose denominator is the total expenditures of the corporation for wages, salaries, commissions, and other compensation to all its employes.

"(3) Of the remaining third, such portion shall be attributed to business carried on within the Commonwealth, as shall be found by multiplying said third by a fraction, whose numerator is the amount of the taxpayer's gross receipts from business assignable to this Commonwealth as hereinafter provided, and whose denominator is the amount of the taxpayer's gross receipts from all its business. . . .

"The amount assignable to this Commonwealth of expenditures of the corporation for wages, salaries, commissions, or other compensation to its employes, shall be such expenditures for the taxable year as represent the wages, salaries, commissions, or other compensation of employes, not chiefly situated at, connected with, or sent out from, premises for the transaction of business owned or rented by the corporation outside the Commonwealth.

"The amount of the corporation's gross receipts from business assignable to this Commonwealth shall be the amount of its gross receipts for the taxable year from (1) sales, except those negotiated or effected in behalf of the corporation by agents or agencies chiefly situated at, connected with, or sent out from, premises for the transaction of business owned or rented by the taxpayer outside the Commonwealth, and sales otherwise determined to be attributable to the business conducted on such premises, and (2) rentals or royalties from property situated, or from the use of patents, within this Commonwealth. . . ."

To aid in obtaining the value of the privilege of doing business in this state, the rate being applied to that valuation, the legislature dealt with wages and gross receipts and provided in paragraph 2(c) (2) for the use of a fraction (shortly stated) $\frac{\text{Payroll in State}}{\text{Payroll everywhere}}$ and in paragraph 2 (c) (3) for a fraction $\frac{\text{gross receipts in State}}{\text{gross receipts everywhere}}$

This appeal results from a dispute between the parties concerning the elements to be used in calculating the numerators of those fractions; in other words, what expenditures should be considered as wages paid by the corporation from its place or places of business in Pennsylvania and what should be regarded as its gross receipts in the State. Apart from what is implied in the words themselves as used in 2 (c) (2) and 2 (c) (3), the legislature has provided that wages, etc., "assignable to this Commonwealth . . . shall be such expenditures . . . as represent the wages, [etc.] . . . of employes, not chiefly situated at, connected with, or sent out from, premises for the transaction of business owned or rented by the corporation outside the Commonwealth." For present purposes the important words are the wages for "employes, not chiefly situated at, connected with, or sent out from, premises for the transaction of business owned or rented by the corporation outside the Commonwealth."

The corporation during the year in question, had a number of employes, called in the record "territorial men," employed as selling agents with more or less exclusive selling rights in specified territories to sell the products manufactured in and shipped from Pennsylvania, subject to the corporation's approval in detailed respects. The first question is whether the wages paid to them should be part of the numerator in the payroll fraction.[5] The 9th and 10th stipulations of fact set forth:

---

[5] The amount of these wages was $113,420.84.

"9. The Department of Revenue in making the original settlement increased the numerator of the second allocation, or wage, fraction by the sum of $118,239. Of this sum there was set forth in Table Two 'Salaries and Wages' supporting Schedule P of the 1935 Corporate Net Income Tax Return, salaries paid 'territorial men' in the amount of $113,420.84. By 'territorial men' the company means employees in charge of controlled territories. All of the controlled territories were located outside the Commonwealth of Pennsylvania. A man on being placed in charge of a given territory is given exclusive rights to sell to jobbers within that territory, which might include one or more states or only part of one state.

"In negotiating contracts for the sale of the taxpayer's product, the agent in charge of the territory, or district, had the right to negotiate agreements with jobbers whereby the taxpayer would agree to sell to no other jobbers, within the specified limits as agreed to by the agent of the taxpayer. The agent, or territory man, is constantly travelling between the various towns and cities in his territory entering into contracts with various jobbers.

"On entering into a contract with a jobber for the first time, the 'territorial man' agrees to give that jobber a restricted territory and to sell to no other jobber within that territory. The 'territorial man' is familiar with the financial responsibility of the various jobbers in his territory. On entering into a contract with a jobber for the first time the order is forwarded to Philadelphia and the credit limit is set by the credit manager of the taxpayer in Philadelphia. The salesman is advised of this limit and may never exceed the same. The salesman is advised two or three times a month of the shipments made to the various jobbers. All travelling and hotel expenses of the 'territorial men' are paid by the taxpayer. The 'territorial men' are paid on a salary basis.

"During the year in question the taxpayer had forty-two men in charge of controlled territories. These men were all non-residents of Pennsylvania, performed all of their services outside of this Commonwealth, and only came to Philadelphia to attend a general sales meeting once a year.

"These 'territorial men' or agents are employed only by the taxpayer and work for no other person, firm or corporation. All of their time is devoted exclusively to the business of the taxpayer. 'Territorial men' have power to employ other salesmen in their territories, the wages of which are paid by the taxpayer. 'Territorial men' likewise have power to discharge the men so employed.

"These 'territorial men' due to the nature of their occupation must be constantly traveling and must constantly keep in close touch with all the jobbers in their territory. The 'territorial men' might be able to call on every jobber in his territory within a period of one week, and again in other territories he might only be able to call upon the jobbers once a month.

"The above wages in the amount of $113,420.84 were paid to the above described 'territorial men' who performed all of their services outside of the Commonwealth of Pennsylvania.

"It is conceded, however, by the appellant that all of said wages and salaries paid, as above described, were disbursed from the Philadelphia offices of the appellant.

*"The appellant had no offices owned or rented outside the Commonwealth of Pennsylvania from which the salesmen above described were assigned, or from which said salesmen could receive their wages and salaries.*

"10. The Department of Revenue in making the original settlement increased the numerator of the third allocation, or gross receipts fraction, by the sum of $6,543,-424. Of this sum there was set forth in Table 3 Gross Receipts supporting Schedule P of the 1935 Corporate Net Income Tax return, gross receipts from territorial

sales to jobbers outside of Pennsylvania in the sum of $6,461,672.46. These gross receipts arose from sales by the 'territorial men' described above. When the 'territorial men' secured orders from jobbers the orders were forwarded to Philadelphia and the goods shipped from the manufacturing plant of the taxpayer in Philadelphia to the jobber outside of Pennsylvania. Bills were rendered from the Philadelphia Office and remittances were made to the Philadelphia Office.

*"The gross receipts as above shown were received by the appellant from sales negotiated or effected by 'territorial men' working from offices owned or rented by the taxpayer within the Commonwealth of Pennsylvania."*

The learned court held that, in arriving at the tax base, the wages paid from appellant's Pennsylvania offices to these employes were an element "assignable to this Commonwealth" (in the words of the statute); that, as the stipulation stated: "The appellant had no offices owned or rented outside the Commonwealth of Pennsylvania from which the salesmen above described were assigned or from which said salesmen could receive their wages and salaries;"[6] that their services were supervised, directed and controlled by the home office in Philadelphia, from which office they received their instructions, and to which they reported, and from which they were paid; that their orders were filled in and shipped from appellant's factory in Pennsylvania; that the itinerant nature of their employment required them to be "constantly traveling between the various cities and

---

[6] In passing, we may observe that in Table 3—Gross Receipts—part of Commonwealth's Exhibit No. 1, nine locations outside of the Commonwealth of Pennsylvania are stated by appellant to be places of business to which gross receipts are assignable. The receipts of $81,752.03 under item "Misc. Sales State of New Jersey," are said in appellant's history of the case to be sales "by salesmen operating from Pennsylvania." That item was included by the Commonwealth in the numerator of the apportionment fraction. The appellant's brief states that "The treatment of the last mentioned figure [$81,-752.03] is not in controversy."

towns" and that in such circumstances they must be regarded as "not chiefly situated at, connected with, or sent out from, premises for the transaction of business owned or rented by the corporation outside the Commonwealth."

Appellant's argument suggests that the trial court's affirmance of requests for findings of fact resulted in inconsistent findings. The suggestion is that the affirmation of appellant's 12th request which reads, "The balance of said gross receipts in the amount of $6,461,672 arose from sales negotiated and effected by territorial men working out of and using hotels outside this Commonwealth as their headquarters, the rental of said hotel space was paid by the defendant," results in this inconsistency. We need not decide whether, in affirming appellant's 12th request for a finding, the learned court went beyond the stipulation made by both parties; we say this because after the case had been first heard, exceptions to the adjudication were filed and were considered by the court in banc, after argument; it was then that the decision was rendered from which this appeal comes, and it was then that reliance was placed by the court on the fact quoted above from the 10th stipulation. The court then said: "On the other hand, the payment of the hotel bills of employes does not impress us as the maintenance of an office, even though business be transacted there. There is nothing in the record to indicate any permanency of hotel rooms as an office; nothing to indicate the holding out of said rooms to the public as an office. Whether any books or records are kept there, salaries of other employes paid there, or what, if anything, is done there is not shown. The territorial men seem to have been traveling representatives whose expenses were paid by the defendant. We are left definitely with the impression that where the territorial man was, there was also the office. In other words, the office followed the man. If we may be permitted to use a mixed figure of speech, it was an ambulatory, peripatetic office

actively engaged in circumnavigating the state. We think that the facts given do not establish the maintenance of an office outside of this state as contemplated by the statute. On the contrary, the facts show that the territorial men worked from offices owned or rented by the taxpayer in Pennsylvania; tenth paragraph of stipulated facts. We can find no other stipulation which modifies this one in any particular, and even though it be conceded that this was so only to the extent described elsewhere, we think it would make no difference.

"The same principles apply to gross receipts from sales by territorial men that apply to their wages."

Appellant contends that if the construction of the statute made below is accepted, the word "premises" in the clause "not chiefly situated at, connected with, or sent out from, premises for the transaction of business owned or rented by the taxpayer outside this Commonwealth" cannot include a hotel room or rooms occupied by territorial men, and that, as a result, the appellant is deprived of the benefit of the equal protection clause of the 14th Amendment and of the uniformity provision of Article IX, section 1, of the Constitution of Pennsylvania. In the first place, the statute refers not to "premises" alone, but specifically to "premises for the transaction of business owned or rented." As to the 14th Amendment, it is sufficient to say that we see no ground for the contention that there is not substantial basis for classification between "premises for the transaction of business owned or rented" by a corporation and a hotel room occasionally occupied by a constantly traveling salesman in the circumstances specified in the stipulation of facts. As the law applies to all corporations, there is nothing to support a finding of want of uniformity.

While it appears that part of the gross receipts resulted from business done wholly in Pennsylvania, the larger part resulted from sales of products manufactured in and shipped from Pennsylvania to customers in

other states. With respect to the challenged allocation of gross receipts, the question is whether they resulted from business transacted by territorial men operating from premises maintained for the transaction of business by the taxpayer in this Commonwealth; of that we have no doubt. The services of the salesmen described in the stipulation determine the status of the receipts for excise tax purposes, and therefore what was said with respect to the wages paid to territorial men applies also to the receipts from the business done by them as an ingredient of the apportionment formula.

Appellant also "denies that such a tax may be measured by income attributable to the business activity outside the Commonwealth" on the ground of violation of due process. This contention must be rejected for the reason clearly stated in *Butler Brothers v. McColgan* (filed March 2, 1942), 86 U. S. L. Ed. Adv. Op. 617: "One who attacks a formula of apportionment carries a distinct burden of showing by 'clear and cogent evidence' that it results in extraterritorial values being taxed. See *Norfolk & Western Ry. Co. v. North Carolina,* 297 U. S. 682, 688. This court held in *Hans Rees' Sons, Inc., v. North Carolina,* supra, p. 135, that that burden had been maintained on a showing by the taxpayer that 'in any aspect of the evidence' its income attributable to North Carolina was 'out of all appropriate proportion to the business' transacted by the taxpayer in that State. No such showing has been made here."

The Attorney General's commissions are payable: Section 1408, Act of April 9, 1929, P. L. 343, 72 PS section 1408; *Commonwealth v. Budd Realty Corporation,* 345 Pa. 343, 28 A.2d 132.

Judgment affirmed.