## Commonwealth v. Frick Company

*B. B. Bastian*, Deputy Attorney General, and *James H. Duff*, Attorney General, for Commonwealth.

*M. Clyde Sheaffer*, for defendant.

RICHARDS, J., February 28, 1944.—This is an appeal from the settlement of the corporate net income tax of defendant for the fiscal year ending October 31, 1936, in the amount of $17,726.42. The case was tried by the court without a jury, pursuant to a stipulation filed. The appeal involves but a single point, namely, the assignment to Pennsylvania of gross receipts from sales made to factors in other States. The amount of such sales involved is $722,113.47.

### Facts

Defendant is a Pennsylvania corporation having its principal office and manufacturing plant at Waynesboro, Pa. It maintains branch offices in other States

under the control of branch managers. These branch managers contact dealers in their territory who agree to handle the products of defendant. The branch managers submit to the dealer a standard form of contract for signature. The contract is then sent to the home office for execution by the company.

After execution of the contract between the company and the dealer, the latter being referred to as the factor, the company ships to the factor certain goods on consignment. These goods remain the property of defendant and are so marked on the factor's premises: contract, para. 25. When the factor makes a sale, the order may be filled either from consigned stock or from stock shipped from the plant of defendant at Waynesboro. In either case, defendant sells the goods to the factor and the factor sells to the trade. The company looks only to his purchaser for payment. The credit rating of the factor is subject to approval of the home office from time to time.

The factor makes out orders in quadruplicate. One copy is retained by him and the other three sent to the home office of the company at Waynesboro. The company, in turn, sends one copy to the manager of its branch office. The branch manager is paid a commission on sales made to factors in his territory and is expected to promote sales, render engineering advice, and inform the factor of prospects. The amount of sales by defendant to factors in other States for the year in question amounted to $722,113.47. The question is: Are these sales assignable to Pennsylvania?

### Discussion

This tax was levied under the Corporate Net Income Tax Act of May 16, 1935, P. L. 208, 72 PS §3420a. Section 2 of this act provides:

"The amount of the corporation's gross receipts from business assignable to this Commonwealth shall

be the amount of its gross receipts for the taxable year from (1) sales, except those negotiated or effected in behalf of the corporation by agents or agencies chiefly situated at, connected with, or sent out from, premises for the transaction of business owned or rented by the taxpayer outside the Commonwealth. . . ."

The question here is, do the sales in question come within the above exception or not? If within the exception, they should be excluded from the numerator of the gross receipts fraction; if not within the exception, they should be included in the numerator.

It should be noted that the Act of 1935 provides that, when the entire business of a corporation is not transacted in Pennsylvania, certain allocation fractions shall be used. The third fraction, commonly called the gross receipts fraction, is the only one involved in the present case. The numerator of this fraction is gross receipts assignable to Pennsylvania and the denominator is the total gross receipts from all business: see section 2 of said act, under net income, 2 (c) 3.

In considering this matter, it must be borne in mind that there is no dispute as to the facts. The only dispute is the legal effect of the facts. It is conceded that, had the branch manager or his subordinates made the sales, they would not be assignable to Pennsylvania. The Commonwealth contends, however, that neither the branch manager, nor anyone working under him, made any sales.

A sale is the transfer of property and title thereto by agreement, for a consideration. We cannot see that the branch managers, or any persons working under their supervision, made a sale within this meaning of the term. When the branch manager induced a factor to execute a standard contract with the company, he did not make a sale. The most he accomplished was to get a factor who agreed to handle the products of de-

fendant. The branch manager did not negotiate a sale or effect a sale. The most he did was to procure a factor who would do these things. His duties were more in the nature of sales promotion. He stimulated the interest of factors in handling the products of defendant. He furnished certain advice, after the factorage contract was executed. He gave the names of prospects to the factor. He promoted the general interest of defendant. But he did not make sales. There is not a word in the record to indicate that the branch agent made a sale. The fact that he received a commission on sales made to factors in his territory has no bearing on the problem. That was simply a device to measure his compensation. Another device would have served the same purpose, although perhaps not so well, or with the same stimulating effects. A straight salary could have been paid him. But, be this as it may, a method of compensating the manager does not determine whether or not he made sales or whether or not these sales should be attributed to Pennsylvania.

We are not here interested in sales made by factors to the trade. Those sales were not made by or on behalf of defendant. They were not included in defendant's reported gross receipts. They were sales on his own responsibility and at his own risk. If he failed to collect what was owed him, he lost and not defendant company.

The only sales with which we are concerned are sales by defendant company to the factors. The home office passed upon his credit in the first instance, and from time to time as circumstances required. The goods shipped to the factor on consignment remained the property of defendant until sold, when the factor only was responsible to the company. Other goods shipped to him from the factory were charged for f. o. b., at the prevailing price, and only when he had a credit rating which warranted the shipment. These sales

were made by the home office in Pennsylvania to the nonresident factor, on the latter's order. They were not made by the nonresident branch manager.

It follows, from what we have said, that the sales are not within the exception. The amount of such sales, totaling $722,113.47, must therefore be included in the numerator of the gross receipts fraction.

The constitutional questions raised by appellant have been considered and disposed of by this court and the Supreme Court in Commonwealth v. Bayuk Cigars, Inc., 50 Dauph. 243, and 345 Pa. 348.

We have received no requests from the Commonwealth for findings of fact or conclusions of law. Those which we have received from defendant we have acted upon and filed of record. In addition, we make the following

### Conclusions of law

1. Gross receipts from sales of defendant, in the amount of $722,113.47, made by defendant to factors outside of this State, are assignable to Pennsylvania.

2. The corporate net income tax of defendant, for the fiscal year ending October 31, 1936, was properly settled in the amount of $17,726.42.

3. The amount owing by defendant for the tax aforesaid and commissions is as follows:

Tax as settled ................... $17,726.42
Tax paid ....................... 17,726.42

          Balance .......... None

Tax in dispute.......... $1,800.72
Attorney General's commission on tax in dispute, 5% .................... $90.04

          Total ......... $90.04

*Decree nisi*

And now, to wit, February 28, 1944, judgment is hereby directed to be entered in favor of the Commonwealth and against defendant in the amount of $90.04, unless exceptions be filed within the time limited by law. The prothonotary is directed to notify the parties or their counsel of this decree forthwith.