**J. E. LUCKETT, Commissioner of Revenue, et al., Appellants,**

**v.**

**COCA-COLA BOTTLING COMPANY OF LOUISVILLE, Inc., Appellee.**

Court of Appeals of Kentucky.

Feb. 28, 1958.

————◆————

Jo M. Ferguson, Atty. Gen., Hal O. Williams, Asst. Atty. Gen., William S. Riley, Atty., Dept. of Revenue, Frankfort, for appellants.

William A. Mackenzie, Skaggs, Hays & Fahey, Louisville, for appellee.

STEWART, Judge.

This appeal involves the question of whether certain business income of Coca-Cola Bottling Company of Louisville (herein called "Coca-Cola"), which was assessed by the Department of Revenue for the years 1951 through 1955, was allocable to Kentucky for the payment of income taxes and the accrued interest thereon. The lower court voided the assessments made for each of the years, and this appeal is from the judgment dismissing the Department's claim.

The controlling statute is KRS 141.120(4) (f) which reads: "Receipts from sales and other sources shall be assigned only to the office, agency or place of business of the corporation at which the transactions giving rise to the receipts are chiefly negotiated."

The facts have been stipulated and may be briefly stated as follows: Coca-Cola, a Kentucky corporation, has its plant in Louisville where it manufactures and bottles Coca-Cola which is sold in Kentucky and also in Indiana. A certain number of its truck drivers make deliveries only in Indiana and particular routes wholly with-

in that state are assigned to these drivers. The latter start out from Louisville each morning with truck loads of bottled Coca-Cola and make calls upon regular and prospective customers along their routes. At night the drivers return to Louisville with their loads of empty bottles and with any cases of Coca-Cola they may have been unable to dispose of.

Some of the deliveries of Coca-Cola were carried out as a result of orders previously submitted to the Louisville office. Receipts from such preordered sales are conceded by Coca-Cola to be allocable to Kentucky. The transactions in dispute are those effectuated by the drivers in Indiana as "on-the-spot" sales, with the order being given to the drivers at the time of sale and delivery being then made by them. In most instances the drivers consummated such sales for cash and collected the amount of the purchase price then and there. In some cases, however, sales were made upon credit, and where credit was extended, the purchaser would either later pay the drivers or make remittance to Coca-Cola's office in Louisville. In either type of transaction, whether for cash or for credit, none of such sales effected in Indiana was subject to approval or acceptance at Coca-Cola's office in Louisville, but was final when completed. Coca-Cola paid a gross receipts tax to Indiana during the years here involved on sales made in that state, and Coca-Cola was required to purchase from Indiana a store license for each of its trucks that so operated there.

It is our view the recent case of Allphin v. Glenmore Distilleries Co., Ky., 270 S.W. 2d 168, 169, supports the Department's position that sales made in Indiana of bottled Coca-Cola from trucks operating out of the latter's central office in Louisville on routes situated in Indiana must be allocated to Kentucky for the purpose of determining Coca-Cola's gross income subject to income tax in this state.

In the Glenmore case the facts were that Glenmore had its main office in Louisville and operated its distillery and had its warehouses in Daviess County. It had district or regional sales offices in 29 other states and salesmen in 16 additional states who were responsible to one of the district or regional offices. Orders that were procured by salesmen in those 45 states were sent to the main office in Louisville for approval and, after they were O. K.'d there, were transmitted to Daviess County from which place shipments were made. Payments on account were made in Louisville.

This Court, after examining the statutes of four other states in which the word "negotiated" was used in connection with the consummation of sales determined that the courts of such states had held that:

"* * * the receipts from sales should not be allocated to the state in which is located the main offices of the corporation if the order is solicited and procured by sales representatives whose activities are centered at an office, agency or place of business *maintained* by the corporation outside the state." (Emphasis ours.)

This Court summarized its holding in that case in this language:

"It is our opinion that the lower court properly construed the statute in not assigning to Kentucky the receipts from sales procured by sales representatives operating out of *offices, agencies* or *places of business maintained* by the corporation outside of Kentucky." (Emphasis ours.)

We believe it is obvious the Legislature intended, and the Glenmore case held in construing the provision of law under scrutiny, that the locus of the sale is made dependent upon the site of the office, agency or place of business out of which the salesman works. Especially do we gather this idea from the Glenmore case, because in that opinion the word "maintained" as it appears in connection with office, agency or place of business carries the connotation of a particular or fixed location.

Coca-Cola argues that its truck drivers operating in Indiana are agencies who "chiefly negotiate" sales of its product in that state, and that the particular route assigned to each truck driver there constitutes a "place of business" of Coca-Cola in Indiana. We cannot subscribe to this theory. To hold that each of Coca-Cola's trucks is a sales office within the purview of the provision of law under consideration is to give to the language used an unrealistic interpretation which in our view was never meant by the Legislature. We should add that we think "agency" in the context in which it is employed is synonymous in meaning with "office" and "place of business," and that these terms imply definiteness of position.

The case of Commonwealth v. Bayuk Cigars, Inc., 345 Pa. 348, 28 A.2d 134, is in point on the issue before us. In that case Bayuk Cigars, Inc. manufactured cigars in Philadelphia, Pennsylvania, and sold its product in other states by the use of salesmen, who operated in a particular territory but continually moved about contacting jobbers and negotiating contracts for the sale of this commodity. The court there determined that gross receipts arising out of sales by such salesmen should be allocated to Pennsylvania, even though the sales were made in other states, in the manner indicated.

The contention advanced in the Bayuk Cigars case was, in many respects, similar to that presented in the instant case. The Pennsylvania court pointed out that one who attacks a formula of apportionment assumes a distinct burden of showing by clear and cogent evidence that it results in extraterritorial values being established. Then it went on to hold that the cigar manufacturer had failed to prove that any of its income was attributable to any state other than Pennsylvania. In the case at bar we must likewise conclude that Coca-Cola has failed to sustain the burden of proving that any of its sales should be allocated to Indiana.

Wherefore, the judgment is reversed with directions that it be set aside and that a new one be entered in conformity with this judgment.