**Commonwealth v. American Metal Climax, Inc.**

*Frank A. Sinon,* for appellant.

*Eugene J. Anastasio,* Deputy Attorney General, for Commonwealth.

SWOPE, P. J., April 14, 1970.—We have before us the appeal and specification of objections of American Metal Climax, Inc. Taxpayer appeals from the imposition of foreign excise tax against it for the year 1961. The case was tried on a stipulation of facts and agreement to try without a jury filed by the parties

pursuant to the Act of April 22, 1874, P. L. 109, 12 PS §688. We adopt the facts so stipulated as our findings. Such of them as are deemed pertinent or necessary to an understanding of our decision in this case will be referred to in our opinion.

Appellant, a New York corporation, was originally issued a certificate of authority to do business in Pennsylvania on June 18, 1918. On December 31, 1959, it withdrew its then current certificate and thereafter, on January 3, 1961, the corporation once again received a certificate of authority to do business in this Commonwealth.

In filing its foreign excise tax report for 1961, appellant now agrees it had a capital wholly employed in this Commonwealth in the amount of $4,293,318, against which, for purposes of this tax, it claimed the right to subtract $640,991, that being the greatest amount upon which it had previously paid foreign bonus or excise tax under its original certificate of authority. This deduction was disallowed by the taxing authorities; hence, this appeal.

We are required to determine whether, under the facts of this case and according to the terms of the taxing statute here involved, a foreign corporation which was previously engaged in doing business in Pennsylvania but which surrendered its certificate of authority so to do, upon resuming its operations in this Commonwealth may be subjected to the payment of foreign excise tax on the entire amount of its capital currently employed in Pennsylvania or whether it may, instead, be taxed only upon the amount of such capital which is in excess of the greatest amount of capital at any time previously so employed upon which foreign bonus or excise tax has heretofore already been paid.

The foreign franchise tax differs from the ordinary in that it is not a recurring or annual tax. It is em-

ployed one time only on the amount of capital which is wholly employed in this Commonwealth by a foreign corporation doing business here. Once paid, no further liability for tax arises unless or until the amount of capital employed reaches a point where it exceeds the greatest amount upon which tax has previously been paid. Upon such occurrence, additional tax is payable upon the amount of such excess. This tax has most recently been imposed by the Act of July 25, 1953, P. L. 560, 72 PS §1861, et seq., effective in the year of its passage, which, while it specifically repealed the earlier Foreign Bonus Act of May 8, 1901, P. L. 150, is basically a counterpart of the 1901 Act, except for a few changes, which, while important, have no bearing upon the issues presently for our consideration and which, accordingly, will not herein be further pursued. For our purposes, we are satisfied that the 1953 Foreign Excise Tax Act may be taken as a substantial reenactment of the 1901 Foreign Bonus Act.

Section 2 of the act, 72 PS §1862, imposes foreign excise tax as follows:

"From and after the effective date of this act, every foreign corporation . . . shall, for the privilege of exercising its franchises in Pennsylvania, pay . . . an excise tax of one-third of one per centum upon the amount of any increase of capital actually employed wholly within this Commonwealth . . ."

In order to carry out what we conceive as an unmistakable intention not to impose tax a second time upon the Pennsylvania employed capital upon which foreign bonus under the 1901 Act had already previously been paid by foreign corporations which, like this appellant, had been doing business in Pennsylvania prior to 1953, and which were continuing to do such business in 1953, the legislature provided two distinct classifications for "increase of capital" in the definition section of the 1953 Act. Section 1 of the act, 72

PS §1861, provides, in pertinent part, as follows:

"The following terms when used in this act shall have the meanings ascribed to them in this section: . . .

" 'Increase of Capital' means, (a) as to foreign corporations doing business in this Commonwealth at the effective date of this act, any increase of capital in excess of the amount actually employed wholly in this Commonwealth at any time prior to the first day of January, one thousand nine hundred fifty-three, by such corporations reporting on a calendar year basis, or at any time prior to the first day of any fiscal year, beginning in the calendar year one thousand nine hundred fifty-three, by such corporations reporting on a fiscal year basis; (b) as to corporations admitted to do business in this Commonwealth after the effective date of this act, capital actually employed wholly within this Commonwealth at the time of or after receiving a certificate of authority to do business from the Department of State and any increase thereof."

This same definition section of the act defines the term "foreign corporation" as follows:

" . . . 'Foreign Corporation' means any corporation . . . chartered or created by or under the laws of any other state . . . which has been issued a certificate of authority by the Department of State to do business within this Commonwealth and which either (a) has its principal office or chief place of business located within this Commonwealth, or (b) has any part of its capital actually employed within this Commonwealth. . . ."

It is conceded that appellant, on the effective date of the 1953 Act, qualified for the exclusion provided in subsection (a) of the definition of "Increase of Capital" contained in the act. This was demonstrated when the taxing authorities, in settling the company's

foreign excise tax report for 1956, allowed as a credit against the $640,991 shown therein as the highest amount of capital employed by the company in Pennsylvania during that year all but $192,093, the difference being the greatest amount of capital upon which the company had previously paid bonus or excise tax as required by law from its entry into Pennsylvania in 1918 to the tax year in 1956. It seems equally certain that if the company had received a certificate of authority *for the first time* in 1961, it could not now claim any exclusion under subsection (a), but would instead, undoubtedly be liable for the tax as prescribed in subsection (b).

The difficulty arises because, while the company can be made to fit into either (a) or (b) so long as these two subsections are taken separately, when they are taken together, the taxpayer now seems at one and the same time to fall into either subsection or both. Upon this basis, appellant contends that the terms of the statute are ambiguous and that, therefore, an application of the rules of construction must follow.

We agree that in any case where the terms of a taxing statute are unclear or ambiguous, any doubt or uncertainty as to the imposition of the tax must be resolved in favor of the taxpayer. In the case at hand, however, we see no ambiguity, nor do we find any irreconcilable inconsistencies in or between the terms of the statute.

Appellant, by the very facts of this case, having qualified to do business here prior to 1953, and continuing in that posture on the effective date of the act, originally fell quite clearly within the plain meaning of the language contained in subsection (a) of the definition of "increase of capital" contained therein, as a result of which it was accorded the full benefit of that subsection. Thereafter, however, as shown by the record, the company severed its connection with

Pennsylvania by withdrawing from the Commonwealth and surrendering its certificate of authority to do business here. Still later, and on a date subsequent to the effective date of the act, it reentered the State to do business and, accordingly, again secured a certificate of authority for this purpose. We are satisfied that on the date of the issuance of its second certificate of authority, this company fell, beyond peradventure, into the equally clear language of subsection (b) of the same definition. We see no point, therefore, from or after the date of its inception when either the terms of the statute or the status of this taxpayer under them could fairly be said to have been in doubt.

The Commonwealth's position is simply that since the company falls clearly within the language of subsection (b) of the definition in question, its excise tax report for the year 1961 must be taxed accordingly and that, therefore, no claim for credit for capital upon which tax had been paid under any previous certificate of authority will be recognized, since subsection (b) makes no provision whatsoever for any such credit. Taxpayer offers no facts sufficient to countervail the Commonwealth's position, and, as was pointed out in Commonwealth v. General Foods Corporation, 429 Pa. 266 (1968), at page 281:

"It is clear that the factual burden is on the party who appeals under §1104 of The Fiscal Code, 72 P.S. §1104. See Commonwealth v. Equitable Gas Co., 80 Dauph. 89 (1963) . . . As pointed out dozens of times, a taxing statute is to be strictly construed; and doubts as to its meaning must be resolved in favor of the taxpayer. (case cited). This does not exonerate a taxpayer from its factual burden, however, if it is the appellant."

In the case at hand, we are satisfied that the taxpayer has not met its factual burden.

Appellant contends that, as a matter of law, the fact that it acquired a new certificate of authority as a result of its application relative thereto in 1961, may not be viewed as anything but a sort of continuation of the original certificate of authority which it had acquired in 1918, and which it had surrendered in 1959, however, after having withdrawn from doing business in this Commonwealth. We cannot agree. In principal support of its contention on this point, appellant cites Commonwealth v. 2101 Cooperative, Inc. (No. 1), 27 D. & C. 2d 405, 78 Dauph. 76 (1961), wherein we held that a foreign corporation doing business in Pennsylvania under a power of attorney and statement filed pursuant to the Act of June 8, 1911, P. L. 710, 15 PS §3141, et seq., and which had, in fact, never received a "Certificate of Authority," was, nevertheless, still subject to foreign excise tax. We fail to see how that case supports appellant's position. That case held simply that so long as a foreign corporation can be shown to be present in this Commonwealth doing business, it will be liable to this tax whether it holds a certificate of authority, its equivalent or none at all. We are concerned here, instead, with whether or not a credit for the amount of capital upon which tax has previously been paid will survive the withdrawal from Pennsylvania by the corporation entitled thereto so as to be available to the company once again at the time of, as well as subsequent to, its reentry into the State. For purposes of this determination, the status of the taxpayer's certificate of authority, while not controlling, is, nevertheless, noteworthy, particularly in a case such as the present one where the surrendering of the taxpayer's first such certificate was, in fact, accompanied by a cessation of its business activity in Pennsylvania and where the issuance of its second such certificate was predicated upon the company's reentry into this State for the purpose of

resuming its business activities here. We are satisfied that in a case such as this, wherein both of the above factors can be shown to coincide and even to go hand in hand as the company's Pennsylvania history unfolds, we may properly conclude that the company's first withdrawal worked a final, unconditional termination of its franchises and privileges in this State and that the subsequent issuance of a new certificate, therefore, constituted a new grant of authority sufficient to bring it clearly within the purview of subsection (b) of the statutory definition here under consideration.

Appellant contends that if the settlement from which this appeal was taken is allowed to stand, it will result in a form of double taxation, a consequence which can be supported only where the terms of the statute clearly express such an intention on the part of the legislature. This contention, while it is based upon sound principle, cannot serve to aid appellant in its present appeal, since it also depends upon whether or not appellant's two distinct and separate periods of activity in Pennsylvania may somehow be taken as a single, ongoing affair, which basic position, we conclude, has not been successfully established. Under our view of the case, the Commonwealth is collecting two separate taxes, one each on two separate exercises of a privilege. It is not, as appellant contends, collecting the tax twice on a single continuing exercise of that privilege.

Finally, appellant advances the theory that the legislature, in enacting the provisions of the Foreign Excise Tax Act of 1953, particularly in its definition of "Increase of Capital," did not envision a fact situation such as that presented in the instant case. It is implied that had the legislature foreseen this situation, it would most probably have provided relief in the statute. We cannot say whether the theory

sounds in fact or fiction. In any event, the legislature would have it within its power to amend the act at any time. Such a function is clearly not within the court's prerogatives and we will address ourselves thereto no further.

To follow this discussion, we make the following

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the subject matter of the within appeal.

2. During the tax year 1961, American Metal Climax, Inc., was properly treated by the Pennsylvania taxing authorities as falling within the language of subsection (b) of the definition of "Increase of Capital" contained in section 1 of the Foreign Excise Tax Act of 1953, P. L. 560, as amended.

3. During the tax year 1961, American Metal Climax, Inc., was not entitled to claim any credit under subsection (a) of said definition for capital upon which tax had been paid previous to the issuance in 1961 of the company's current certificate of authority to do business in Pennsylvania or under the authority of subsection (a) of said definition, or under any other authority statutory or otherwise.

4. The taxing authorities of this Commonwealth properly denied the claim of American Metal Climax, Inc., in its 1961 foreign excise tax report for a credit for the greatest amount of capital ($640,991 in 1956) upon which tax had been paid prior to the date of issuance of the company's current certificate of authority in 1961.

5. In the instant appeal, American Metal Climax, Inc., has failed to meet its burden of proving facts sufficient to support its entitlement to the relief sought.

6. Under the facts of this case and the law relative thereto, this appeal must be denied.

Appellant's requests for conclusions numbered 1 and 5 are granted and incorporated herein by reference. Appellant's requests for conclusions numbered 2, 3, 4, 6, 7, 8, 9, 10, and 11 are denied.

In accordance with all of the foregoing, we make the following:

## ORDER

Now, April 14, 1970, the above-captioned appeal of American Metal Climax, Inc., from the action of the Pennsylvania Board of Finance and Revenue dated June 23, 1966, refusing appellant's petition for review of the actions of the taxing authorities of this Commonwealth in settling its 1961 foreign excise tax report is hereby denied and the action of the Board of Finance and Revenue in refusing said petition and thereby further sustaining said settlement of tax in accordance with the following calculation:

"Greatest amount of capital employed
 in Pennsylvania during the year
 1961 ........................ $ 4,293,318
Greatest amount of capital actually
 employed in Pennsylvania at any
 time prior to 1961 ............... - 0 -
Increase of capital subject to tax .... $ 4,293,318
Tax at one-third of one percent ...... $14,311.06"
is hereby affirmed.

Judgment is directed to be entered in favor of the Commonwealth of Pennsylvania and against American Metal Climax, Inc., in the amount of $14,311.06, plus interest as prescribed by law, unless exceptions are filed hereto within 20 days of the date hereof.

The prothonotary is directed to notify the parties or their counsel of this opinion and order, forthwith.

---

Judge Caldwell did not participate in the consideration or determination of this case.