## Commonwealth v. Coca-Cola Company

*M. David Smeltz,* for Commonwealth.
*Frank A. Simon,* for appellant.

SWOPE, P. J., January 28, 1972.—The Coca-Cola Corporation appeals herein from a resettlement by the taxing authorities of the Commonwealth of its franchise and corporate net income taxes for the calendar year, 1964. Following denial of its petition for review filed with the Board of Finance and Revenue, the taxpayer perfected an appeal to this court pursuant to section 1104 of The Fiscal Code of April 9, 1929, P. L. 343, as amended, 72 PS §1104. As the issues involved with respect to both franchise and corporate net income taxes are substantially identical, the appeals were consolidated for trial, held by agreement of the parties without a jury.

The issues raised in the instant case involve the timeliness of settlement, the valuation of the taxpayer's capital stock, the construction of the numerators of the tangible property and gross receipts fractions in the computation of the Franchise and Corporate Net Income Tax Acts of June 1, 1889, P. L. 420, as amended, 72 PS §1871, and May 16, 1935, P. L. 208, as amended, 72 PS §3420b, and the burden of proof. Appellant objects to the resettlement in that: (1) It was not timely made; (2) the valuation of its capital stock and the numerator of the tangible property fraction were settled and resettled as reported by the taxpayer, and ought to be reduced; and (3) the resettlement included in the numerator of the gross receipts fraction certain sales proceeds which it claims should properly have been allocated outside of Pennsylvania. The involved components of the disputed resettlements are set forth below:

(1) VALUATION OF CAPITAL STOCK
    (a) Originally reported by taxpayer . . . $585,856,108
    (b) Settled ....................... $585,856,108
    (c) Resettled ..................... $585,856,108
    (d) Taxpayer's present claim ........ $445,000,000

(2) TANGIBLE PROPERTY FRACTION
  (a) Originally reported by taxpayer . . . $ 1,225,929
                                             156,851,100
  (b) Settled . . . . . . . . . . . . . . . . . . . . . . $ 1,225,929
                                             156,851,100
  (c) Resettled . . . . . . . . . . . . . . . . . . . . $ 1,225,929
                                             156,851,100
  (d) Taxpayer's present claim . . . . . . . $ 854,186
                                             156,851,100

(3) GROSS RECEIPTS FRACTION
  (a) Originally reported by taxpayer . . . $ 974,173
                                             564,100,907
  (b) Settled . . . . . . . . . . . . . . . . . . . . . . $ 20,698,016
                                             564,100,907
  (c) Resettled . . . . . . . . . . . . . . . . . . . . $ 21,763,016
                                             565,165,907
  (d) Taxpayer's present claim . . . . . . . $ 0
                                             565,165,907

The Commonwealth contends that the settlement and resettlement of the taxpayer's corporate net income tax and franchise tax for the calendar year 1964 was properly computed; that the taxpayer is barred from raising the issue of timeliness in that it failed to bring the issue to the attention of the department making the review; and that it has failed to meet its burden of proof with regard to the valuation of capital stock, the gross receipts fraction and the tangible property fraction.

## FACTS

The record establishes that appellant is a Delaware corporation doing business in Pennsylvania under a certificate of authority issued originally on January 2, 1961. The certificate authorized Coca-Cola to "manufacture, process, grow, package, warehouse, merchan-

dise, advertise, sell and promote the sale of food and soft drink products and related goods and wares." During the year in question, three divisions of the Coca-Cola Corporation were engaged in activities in Pennsylvania, for the merchandising of coffee and tea, fountain syrup and citrus products.

Tea and coffee products of the Tenco Division were manufactured at plants in Morris Plains, N.J., and Linden, N.J., respectively. There were no Tenco Division manufacturing plants or sales offices in the Commonwealth of Pennsylvania. These products were produced and packaged for customers, major retail chain stores and regional coffee roasters and wholesalers, under private brand names. Sales in Pennsylvania were solicited by representatives headquartered at Linden, N.J. Orders were received either by mail or telephone from a customer or directly from a salesman and accepted or rejected at the sales office in Linden, N. J., from which billings were made. Like products of the Tenco Division, fountain syrup was manufactured at plants outside of Pennsylvania. The syrup was sold to authorized wholesalers approved at the taxpayer's headquarters in Atlanta, Ga. Coca-Cola made no sales of fountain syrup directly to retailers. Purchase orders from authorized wholesalers were accepted or rejected at the out-of-State manufacturing plant to which they were submitted. Billings were made from the corporation's Atlanta office. Territory or district managers were maintained in Pennsylvania to place point of purchase advertising, to assist retailers in the promotion of Coca-Cola products to customers, and to conduct advertising and marketing surveys. These employes neither solicited nor transmitted orders for the taxpayer's products from either retailers or wholesalers.

The taxpayer's Commonwealth sales of citrus products during the period in question were accomplished

by independent brokers who, having no authority to effect sales, solicited orders and submitted them to the taxpayer's office in Orlando, Fla. If accepted, the orders were filled from warehouses outside of the State of Pennsylvania.

On June 1, 1963, the corporation acquired a manufacturing plant at Lansdale, Pa. The record shows that the plant was purchased without an intent to operate it, nor was it, in fact, used in connection with the business of the taxpayer. On May 1, 1964, the sale of the plant was negotiated by Coca-Cola from its office in Atlanta, Ga. The value of the plant was included by the taxpayer in both the numerator and denominator of the tangible property fraction for the franchise and corporate net income taxes, and was reflected in the settlement and resettlement of those taxes.

## FINDING OF FACT

We make the following determinations after careful consideration of the specific requests for finding of fact by each of the parties. Commonwealth's requests numbered 1, 2, 3, 5, 6, 9, 10, 11, and 13 are statements of fact borne out by the record and where pertinent are narrated above or will be treated later in the body of our opinion. They are necessarily granted. Commonwealth's request number 4 is granted insofar as the average market value of the taxpayer's shares for 1964 as computed by the company officials was at least three times the settled or resettled valuation of $585,856,108. Commonwealth's request number 7 is denied and we find that the nature of the taxpayer's business activity in Pennsylvania did not include "sales" for the purpose of allocation of gross receipts to the numerator of the gross receipts fraction. Commonwealth's request number 8 is denied in that the

record is not wholly void of documentary evidence of the type described.

Both parties assert (the Commonwealth in its request number 12 and the taxpayer in its request number 41), and we further find as a fact that:

The numerator of the gross receipts fraction as resettled is made up of the following:

| | | |
|---|---|---|
| (a) | Receipts from sale of citrus products | $11,618,232.00 |
| (b) | Receipts from sale of fountain syrup | 5,216,234.00 |
| (c) | Receipts from sale of coffee and tea | 3,563,550.00 |
| (d) | Gross sale price of Penna. property | 1,365,000.00 |
| | | $21,763,016.00 |

We turn now to the 71 requests for finding of fact made by the taxpayer. With regard to requests numbered 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, and 71, we are satisfied that each of these requests is supportable in the record and they are, therefore, granted. Such of them as are deemed necessary or pertinent to the determination of this case, are treated in the above statement of facts or in the body of our opinion. Taxpayer's requests numbered 52, 53, 54, and 55, having to do with the valuation of capital stock are denied each and severally and will be discussed in our treatment of that issue.

### Timeliness of Settlement

We must first decide whether appellant may raise the argument that the settlements complained of were not timely made, as provided for in section 801(b) of The Fiscal Code of April 9, 1929, P. L. 343, as amended, 72 PS §801(b). Section 1104 of The Fiscal Code, supra, 72 PS §1104, provides, in relevant part:

"Appeals taken hereunder shall be hearings de novo, and no questions shall be raised by the appellant that were not brought to the attention of the department making the settlement, *or* in the application for resettlement, *or* petition for review prior to the appeal, *and* set forth in the specification of objections contained in the affidavit accompanying the appeal, unless the court shall be satisfied that the appellant was unable, by the exercise of reasonable diligence, to have raised such questions before the department making the settlement and the Board of Finance and Revenue, and no questions shall be raised which are not included in the specification of objections filed as hereinbefore provided." (Italics supplied.)

This court spoke to the matter of timeliness in Commonwealth v. Sherwin Equipment, Inc., 45 D. & C. 2d 587, 590, 89 Dauph. 330 (1968), which involved the petition of appellant to include the question of timeliness in his specification of objections. We stated therein, at page 331:

"This section [1104] clearly sets forth that no questions shall be raised that were not introduced during prior administrative proceedings. An exception is provided where petitioner '. . . was unable, by the exercise of reasonable diligence, to have raised such questions . . .' "

The present appellant, while it raised the issue of timeliness in its specification of objections as part of these appeals, nevertheless had not raised this issue specifically before the taxing authorities nor was it raised in its petition for resettlement or petition for review before the Board of Finance and Revenue. We cannot agree with the taxpayer's contention that words such as "irregular and improper action," "illegal tax," and "illegal and inequitable, under all circumstances," as used in the petition for review, were suffi-

cient to raise the issue of timeliness within the meaning of section 1104. We have not been made aware of any reason why the taxpayer was unable, by the exercise of reasonable diligence, to have raised the question in the course of earlier proceedings, and conclude, accordingly, that it may not now be raised for the first time before this court.

### Valuation of Capital Stock

The taxpayer admits that the valuation of its capital stock at $585,856,108 was a result of its own failure to be "conversant with Pennsylvania law with regard to the capital stock valuations and interpretations and practices of the Department of Revenue and the Department of the Auditor General." It is asserted, further, that the valuation of the taxpayer's capital stock ought to be $445,000,000 for the purposes of instant settlement. The question in whether the valuation of $585,856,108 as originally reported by the taxpayer and settled and resettled by the Commonwealth is excessive.

The statutory language governing the question of valuation is found in the Act of June 1, 1889, P. L. 420, sec. 20, as amended, 72 PS §1902, providing as follows:

". . . the capital stock of the said corporation at its actual value in cash as it existed at the close of the year for which report is made; taking into consideration, first, the average which said stock sold for during the year; and second, the price or value indicated or measured by net earnings or by the amount of profit made and either declared in dividends, expended in betterments, or carried into the surplus or sinking fund; and third, the actual value indicated or measured by consideration of the intrinsic value of its tangible

property and assets, and of the value of its good will and franchises and privileges, as indicated by the material results of their exercise, taking also into consideration the amount of its indebtedness."

It is established that the valuation of capital stock is not a matter of strict formula but a matter of judgment governed by considerations of common sense and practical business experience. Taxation is a practical and not a scientific problem: Commonwealth v. Rosenbloom Finance Corporation, 49 D. & C. 2d 517, 91 Dauph. 359, 362 (1969).

Appellant herein, taking into consideration its five-year average earnings capitalized at 10 percent ($414,-743,349), and five-year average dividends capitalized at eight percent ($442,308,132) as well as net asset value ($282,716,289) arrived by way of the so-called "Average Three Way Method" (see Mahon, Graichen and Habermehl, State Taxation of Corporations in Pennsylvania (1968), sec. 2-9.3) at an average stock value of $379,922,590. To this figure $65,000,000 was added in consideration of other factors affecting the valuation, and, accordingly, the figure of $445,000,000 is now proposed by it as the proper value of its capital stock.

The statutory language involved, however, also requires a consideration, inter alia, of the average selling price of the stock held by the taxpayer corporation. Appellant reported 14,202,358 shares outstanding for 1964. This number multiplied by the $129.38 average selling price of the stock for the year in question produces a total selling price of $1,837,501,078, or more than three times the amount originally reported by the taxpayer and finally settled upon by the Commonwealth as the valuation for purposes of the taxes in question. In light of the gross disparity between these figures, it would appear that the valuation initially pro-

posed by the taxpayer and settled and resettled by the Commonwealth is more than generous to appellant. Upon consideration of all of the factors pertinent thereto, we conclude that the valuation of $585,856,108 is proper.

### Tangible Property

Also in issue in this case is the inclusion of the value of the Lansdale plant in the numerators of the tangible property and gross receipts fractions for the franchise and corporate net income taxes. The plant was purchased by the taxpayer on June 1, 1963, and owned by appellant for less than a year, during which time the plant was not operated. The sale of the plant was negotiated on May 1, 1964, from the corporation's offices in Atlanta, Ga. It is the position of the taxpayer that the value of the Lansdale plant ought to be excluded from its tax computations in that its purchase and sale were unrelated to the exercise of its Pennsylvania franchise. With this contention, the court agrees.

It is established that the taxes in question are levies on the franchise and not the property of a business per se: Commonwealth v. Columbia Gas and Electric Corp., 336 Pa. 209, 218 (1939). Further, the Pennsylvania Supreme Court has sustained the exclusion of value or income from the computation of the taxes involved where: (1) The taxpayer realizes such income from the conduct of a separate business outside of Pennsylvania (the so-called "multiform" concept) or (2) the taxpayer owns an asset or assets unrelated to the exercise of its franchise or the conduct of its activities in Pennsylvania (the so-called "unrelated asset" concept): Commonwealth v. ACF Industries, Inc., 441 Pa. 129, 135 (1970).

There is no suggestion here that Coca-Cola is in the business of buying and selling real estate or that its business is otherwise multiform. The exclusion of the value of the Lansdale property must rest, therefore, on

the unrelated asset theory. The rule as set forth in Commonwealth v. Emhart Corp., 443 Pa. 397, 404 (1971), was that the proper standard in evaluating whether a taxpayer has sustained his burden as to a showing of unrelated asset is to determine if there is clear evidence that the asset is not "a necessary part of the corporate activity." Though the burden mentioned in that case was with relation to the taxing of extraterritorial values, it is the view of this court that the fact that the plant in question was located in Pennsylvania does not affect the degree to which the Lansdale property was an unrelated asset. To the contrary, it was the holding in Commonwealth v. The Mundy Corporation, 346 Pa. 482 (1943), that securities held by a Delaware taxpayer engaged in the real estate business were unrelated assets and that their status as such was unaffected by the fact that the taxpayer's only office was in Pennsylvania, and that the securities in question were located in this Commonwealth, and that the income therefrom was deposited here: Commonwealth v. ACF Industries, supra, at 137.

In the instant case, the Lansdale plant was not purchased by the taxpayer for the purpose of operation or of otherwise furthering its Pennsylvania franchise. Nor was the plant, in fact, operated or involved with the activities of the corporation as described in its certificate of authority. Finding, therefore, that the plant was not a "necessary part of the corporate activity in Pennsylvania" we hold that the value of the plant was improperly included in the numerators of the fractions involved.

## Gross Receipts Fraction

Of initial concern to the taxpayer, as set forth in its petition for resettlement, is the question of whether certain sales receipts resulting from activities of employes working from offices outside Pennsylvania or

of promotional men within the Commonwealth were properly allocated to Pennsylvania. It should be stated parenthetically at this juncture that the Commonwealth agrees that its final valuation of $21,763,016 must be reduced at least by $674,173, due to an error. The parties have stipulated to this fact and, accordingly, we so find.

The taxpayer maintains additionally that none of the gross receipts from the sale of the products in question, coffee and tea, fountain syrup, and citrus products, are allocable to Pennsylvania. Uncontroverted testimony by various officers of the corporation show that these sales were accomplished by the activities of independent brokers, promotional men and authorized wholesalers. In no instance were products sold directly to retailers nor could any sales be effected by an employe or office in Pennsylvania.

It is clear that the burden of proof is on appellant: Commonwealth v. General Foods Corp., 429 Pa. 266, 281 (1968); Commonwealth v. Equitable Gas Co., 80 Dauph. 89, 97 (1963). █ The Commonwealth argues in the instant case that the taxpayer has not met that burden, and seeks to apply the best evidence rule, asserting that documents are essential to the proof of appellant's case. With this contention, we cannot agree. In the case at bar, it is not the contents of a writing which are at issue. Where a fact in issue may be proved either by a writing or by other evidence; the best evidence rule will not be taken to require proof of the fact only by the writing: Sum. Pa. Jur., Evidence, §180.

The recent case of Commonwealth v. General Foods Corp., supra, is controlling with regard to the allocability to Pennsylvania of gross receipts such as those in-

volved here. While in that case, and in the course of its reconsideration thereof in 442 Pa. 273 (1971), the Supreme Court was concerned, inter alia, with the existence of "automatic-repeat orders" and the degree to which they might affect gross receipts allocations, in the course of its opinions therein, the court enunciated certain general rules which we take as peculiarly applicable to the case at hand.

The statutory language pertinent to our present determinations exempts from inclusion in the gross receipts fraction of amounts reflecting sales negotiated or effected by "agents or agencies chiefly situated at, connected with, or sent out from premises for the transaction of business maintained by the taxpayer outside the Commonwealth": 72 PS §1871(b)(3). The court in Commonwealth v. General Foods Corp., 429 Pa. at 276, allowed for the possibility that a company could sell 100 percent of its products to Pennsylvania customers and yet allocate no sales to the Commonwealth. The court continued at page 281:

"The initial contacts between customer and seller may actually involve the negotiation and effectuation of a long-continued series of sales if these contacts actually involve an agreement to sell. Where, however, only a status (e.g. approved customer) is determined, it is clear that no sale is made. . . . Somewhere in the relationship of buyer and seller something happens which brings about a sale; when it does, an allocable event occurs."

In the case of citrus products, the negotiation or effecting of sales of the taxpayer herein was accomplished by independent brokers whose function in Pennsylvania was promotional. The initial contact with the broker by the taxpayer was for the purpose of establishing a status and not for making sales. Not only the terms of the brokerage contract but the final

act of selling were effected at the taxpayer's headquarters in Orlando, Fla.

The sale of fountain syrup was accomplished in Pennsylvania through wholesalers authorized by the taxpayer. Personnel operating out of Pennsylvania offices were limited to promotional work, activities which we conclude, in light of both Commonwealth v. General Foods Corp. cases, supra, do not result in the occurrence of allocable events for purposes of the taxes here in question.

The record further establishes that orders for tea and coffee products were not only approved exclusively in the State of New Jersey, but the promotional men involved operated from the Linden, N. J., plant. We conclude that any inclusion of gross receipts so generated in the numerators of the pertinent fractions involved would constitute a patent interference in interstate commerce.

Quite clearly, the gross receipts here disputed were negotiated and effected at offices situated outside of the Commonwealth and are, under the statutory language involved and its interpretation in Commonwealth v. General Foods Corp., supra, properly to be allocated out of this State. For these reasons, the elimination of the herein questioned gross receipts from the numerators of the tax fractions involved, as suggested by the taxpayer, is deemed proper.

## CONCLUSIONS OF LAW

The Commonwealth's requests for conclusions of law numbered 1, 10, 11, 12, 13, and 14, going to the validity of the settlement and resettlement by the Commonwealth and the failure of the taxpayer to meet its burden of proof, are denied each and severally. The Commonwealth's requests numbered 2, 3, 4, 5, 6, 7, 8, and 9 are granted.

With regard to the taxpayer's requests for conclusions of law, those numbered 6, 7, 12, 13, 14, 15, and 16 are denied. Further, the taxpayer's conclusions in the alternative, numbered 1 through 7, are denied.

The taxpayer's requests numbered 1, 2, 3, 4, 5, 8, 9, 10, and 11 are granted.

We, therefore, make the following conclusions:

1. Appellant, not having raised the timeliness of settlement issue before the taxing authorities or in its petition for resettlement or petition for review before the Board of Finance and Revenue, may not now raise the issue before this court.

2. The valuation of the taxpayer's capital stock as reported by it and as settled and resettled by the Commonwealth for franchise tax purposes for the calendar year 1964 was properly $585,856,108. In these appeals, taxpayer has failed to show sufficient proof to the contrary.

3. The burden of proof is on the party who appeals under section 1104 of The Fiscal Code, 72 PS § 1104.

4. The taxpayer's burden of proof exists not only as to the unconstitutionality or illegality of the resettlement, but also as to the mathematical components of the fractions.

5. The taxpayer has proven by a preponderance of the evidence that all of the gross receipts assigned by the Commonwealth to the numerator of its 1964 gross receipts fraction were negotiated and effected by agents and employes connected with offices outside of Pennsylvania.

6. The Commonwealth failed to settle and resettle taxpayer's 1964 corporate net income and franchise taxes in accordance with applicable constitutional and statutory provisions.

7. The Commonwealth improperly assigned to the numerator of the gross receipts fraction all of appel-

lant's gross receipts from goods delivered to Pennsylvania destinations, in violation of the Act of June 1, 1889, P. L. 420, as amended, 72 PS §1871, and the Act of May 16, 1935, P. L. 208, sec. 2, as amended, 72 PS §3420b.

8. The Commonwealth may assign to the numerator of a foreign corporation's gross receipts allocation fraction those gross receipts which were ". . . negotiated or effected in behalf of the taxpayer by agents or agencies chiefly situated at, connected with, or sent out from premises for the transaction of business maintained by the taxpayer" in the Commonwealth.

9. The statutory formula for allocating gross receipts to Pennsylvania, frequently called the "office connection" formula, is the only lawful and valid basis for assigning gross receipts to Pennsylvania.

10. The allocation of appellant's 1964 gross receipts based on the "office connection" formula requires that none of those receipts be assigned to the numerator of the gross receipts fraction. Appellant's 1964 gross receipts fraction is therefore zero.

11. The allocation fractions used in assessing the franchise tax and the corporate net income tax are designed to measure the value of a corporation's right to do business (the value of its franchise) in the Commonwealth.

12. The Commonwealth improperly assigned to the numerator of appellant's tangible property fraction the average value of its Lansdale, Pa., plant.

13. Since appellant never used its Lansdale, Pa., plant in connection with or for any function related to the exercise of its Pennsylvania franchise, no part of the value of this plant is includible in the numerator of the property fraction. The numerator of the tangible property fraction is, therefore, reduced by the average value of the Lansdale, Pa., plant.

14. Pursuant to the conclusions of law hereinbefore stated, appellant's franchise tax liability is $9,154 computed as follows:

| | | | |
|---|---|---|---|
| Valuation of capital stock | | | $ 585,856,108 |
| Tangible property | $\ldots \dfrac{854,589}{156,851} =$ | .005448 | |
| Wages and salaries | $\ldots \dfrac{139,424}{35,514,565} =$ | .003926 | |
| Gross receipts | $\dfrac{0}{565,165,907} = $ | $\dfrac{0}{3).009374} =$ | .003125 |
| Taxable Value of Capital Stock | | | $ 1,830,800.34 |
| Tax at 5 Mills | | | $ 9,154.00 |

15. Pursuant to the conclusions of law hereinbefore stated, appellant's 1964 corporate net income tax liability is $14,416.13 computed as follows:

| | | | |
|---|---|---|---|
| Net Income to be allocated | | | $68,379,369.84 |
| Tangible property | $\ldots \dfrac{854,589}{156,851,100} =$ | .005448 | |
| Wages and salaries | $\dfrac{139,424}{35,514,564} =$ | .003926 | |
| Gross receipts | $\dfrac{0}{565,165,907} =$ | $\dfrac{0}{3).009374} =$ | .003125 |
| Income allocated to Pennsylvania | | | $ 213,685.53 |
| Income wholly taxable in Pennsylvania | | | $ 26,583.34 |
| Total taxable Income | | | $ 240,268.87 |
| Tax at 6% | | | $ 14,416.13 |

Wherefore, we make the following

### ORDER

And now, January 28, 1972, the within appeal is denied in part and granted in part. Judgment is directed

to be entered in favor of the Commonwealth and against Coca-Cola Company in the amount of $23,-570.13, with interest according to law, unless exceptions are filed hereto within 30 days of the date hereof.

The prothonotary shall notify the parties or their counsel of this order forthwith.

## OPINION SUR EXCEPTIONS

SWOPE, P. J., July 13, 1972.—The Commonwealth has excepted to the opinion, conclusions of law, and order of this court dated January 28, 1972, which concerned an appeal from a decision of the Pennsylvania Board of Finance and Revenue, involving the franchise and corporate net income taxes of The Coca-Cola Company for the calendar year 1964.

The Coca-Cola Company is a Delaware corporation doing business in Pennsylvania under a certificate of authority issued originally on January 2, 1961. The certificate authorized Coca-Cola to "manufacture, process, grow, package, warehouse, merchandise, advertise, sell and promote the sale of food and soft drink products and related goods and wares."

A plant in Lansdale, Pa., was owned by the company from June 1, 1963, until May 1, 1964, but never operated. Since this ownership was not "a necessary part of the corporate activity" the plant was held to be an "unrelated asset" and, therefore, was excluded from the numerators of the fractions involved in the determination of the company's tax liability for the year in question.

The only exception argued by the Commonwealth is that the court erred in not excluding the value of the Lansdale plant from the denominator of the tangible

property fraction when it excluded this value from the numerator of the fraction.

The Commonwealth relies on Commonwealth v. American Gas Company, 352 Pa. 113 (1945), which involved a New Jersey corporation authorized in Pennsylvania to own public utilities and securities of other companies. A tract of unimproved real estate located in Pennsylvania was acquired by American Gas through a mortgage foreclosure and was retained for less than a year. This was the sole item of tangible property held in this State by the company. In determining the makeup of the tangible property fraction in that case, the court found that the realty in question constituted an "unrelated asset" of the company, resulting in what was properly characterized as a "zero" fraction. It must be noted, however, that since the American Gas Company owned no tangible property whatsoever in Pennsylvania except that which the court found to be "unrelated," the exclusion thereof from the numerator of the tangible property fraction necessarily yielded a zero fraction. A zero numerator yields a zero fraction regardless of the denominator. The situation in the instant case is quite different. The exclusion of the Lansdale plant from the numerator of the tangible property fraction of Coca-Cola yields not a zero numerator, but simply reduces that numerator to $854,589. This being the case, American Gas offers neither precedent nor assistance in determining the proper makeup of the tangible property fraction applicable to Coca-Cola. We must look instead to the statutory prescription in such cases made and provided.

Both the Franchise and Corporate Net Income Tax Acts of June 1, 1889, P. L. 420, as amended, 72 PS §1871, et seq., and May 16, 1935, P. L. 208, as amended, 72 PS §3420a, et seq., state specifically that

the tangible property fraction be a fraction whose denominator is "the value of *all* the taxpayer's tangible property *wherever situated.*" (Italics supplied.) The Lansdale plant meets the explicit requirements for inclusion in the denominator since it is admittedly tangible property of the taxpayer and by its very nature must be situated somewhere. We know of no requirement, statutory or otherwise, that the consideration as to whether or not tangible property is related or unrelated to the taxpayer's activities in Pennsylvania has any relevance whatsover in determining its eligibility for inclusion in the denominator of the pertinent fraction. On the other hand, the statutory provision in this regard is precise and clear as to what shall be considered and leaves no room for interpretation.

Therefore, we are satisfied that the exception argued by the Commonwealth must be denied. The exceptions raised but not argued are deemed waived by the Commonwealth.

In light of the foregoing, therefore, we make the following

## ORDER

And now, July 13, 1972, the exceptions heretofore filed by the Commonwealth of Pennsylvania to our opinion, conclusions of law, and order dated January 28, 1972, in the above-captioned case are hereby denied each and severally.