Commonwealth, Appellant, *v.* General Foods Corporation.

268

Argued September 27, 1967. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*George W. Keitel,* Deputy Attorney General, with him *William C. Sennett,* Attorney General, for Commonwealth, appellant.

*David McNeil Olds,* with him *Carl E. Glock, Jr., Carl F. Chronister, James H. McConomy, Kendall M. Cole, John W. Kuhnemund,* and *Reed, Smith, Shaw & McClay,* for appellee.

*Robert D. Myers, Frank A. Sinon,* and *Rhoads, Sinon & Reader,* for amicus curiae.

OPINION BY MR. JUSTICE COHEN, March 15, 1968:

This is an appeal by the Commonwealth of Pennsylvania (Commonwealth) from an order of the Court of Common Pleas of Dauphin County sustaining the position of General Foods Corporation (taxpayer) in a controversy involving its Pennsylvania franchise tax for the year ended March 31, 1960.

Although the parties phrase the questions involved in different ways, it is clear that the issues presented here are (1) whether wages paid by taxpayer to its employees residing in Pennsylvania under circumstances described below are assignable to Pennsylvania in computing taxpayer's wages and salaries allocation fraction, (2) whether gross receipts of the taxpayer from sales to Pennsylvania customers under similar and other circumstances described below are assignable to Pennsylvania in computing taxpayer's gross receipts fraction for allocation purposes, (3) whether gross receipts of the taxpayer from sales world-wide in which independent brokers were involved are assignable to Pennsylvania in computing taxpayer's gross receipts fraction for allocation purposes and (4) whether the court below failed to follow the statutory provisions applicable to this type of proceeding. Enmeshed with these issues are a number of subsidiary ones which will be noted in the course of this opinion.

270

As is the customary practice, this case was tried without a jury pursuant to the provisions of §1 of the Act of April 22, 1874, P. L. 109, 12 P.S. §688. The applicable procedure is set forth in §2, 12 P.S. §689, of the Act, as follows: "The decision of the court shall be in writing, and, if requested by counsel for either party for the purposes of filing exceptions or for the taking of an appeal, shall state separately and distinctly the facts found, the answers to any points submitted in writing by counsel and the conclusions of law, and shall be filed in the office of the prothonotary or clerk of the proper court where the case is pending, as early as practicable, not exceeding sixty days from the termination of the trial, and notice thereof shall be forthwith given by the prothonotary or clerk to the parties or their attorneys. . . ."

Usually, in this type of tax appeal the facts are established by means of a stipulation entered into between the parties. In such circumstances it is a satisfactory compliance with the above statutory language for the trial court to state that it adopts as its findings of fact in the case those facts which have been stipulated as such by the parties.[1]

In this case, however, although the parties did enter into a stipulation of facts containing 93 paragraphs of agreed factual data and covering 43 printed pages in the record, together with 43 exhibits to the stipulation covering 334 printed pages in the record, they were unable to agree that this stipulation and exhibits was sufficient to complete the evidence necessary to decide the case. They presented testimonial evidence taking another 257 printed pages in the record. Following these proceedings, briefs were filed and oral

---

[1] We do not approve, however, of a court's omitting such a reference completely even though all facts are stipulated.

argument was held; and the record was submitted to the trial court for decision on April 13, 1965.

On September 19, 1966, the court handed down its decision sustaining the taxpayer. In its opinion the lower court narrated the factual material it found relevant but did not "state separately and distinctly the facts found . . . and the conclusions of law. . . ." The Commonwealth, in this appeal, complains of (1) the eighteen month delay between the close of the trial and the filing by the court of its decision and (2) the court's failure to make specific findings of fact and conclusions of law.

The statute does, of course, set forth a sixty day time limit for a decision. However, in a context such as this, use of the word "shall" cannot be construed as setting a mandatory limit on the time in which the court may act. Both this Court (with regard to this statute) and the Superior Court (with regard to another act) have stated that such a provision is directory only. *In re Griffith Will,* 358 Pa. 474, 57 A. 2d 893 (1948); *Damon v. Berger,* 191 Pa. Superior Ct. 165, 155 A. 2d 388 (1959).

While, as a matter of judicial administration, we do not condone a delay of such length in handing down a decision, we can understand how in a given case it may occur. The complexities of fact-finding and application of difficult legal concepts may well prolong the decisional process. We are not prepared here to' take any action in connection with the delay.

The Commonwealth's other objection is more serious. Both it and the taxpayer made specific requests for findings of fact and conclusions of law. In the context of so much testimonial evidence, factual findings in sufficient detail to enable both the parties and this Court on appeal to know what underlies the decision below are obviously a necessity. Otherwise, we

would be compelled to review the record not just to determine if the lower court's findings are supported by credible and competent evidence, but to discern for ourselves what facts are revealed by this evidence. This is not our function.

. Therefore, we believe the proceeding must be remanded for the stating by the court below of the specific facts and conclusions which it, as the trier of the case, deems appropriate. Further, we hold that this procedure must be followed in every case where the facts are not stipulated fully. Where they are partially stipulated, as here, these findings may include a blanket finding of all stipulated facts (or of those specifically deemed relevant by the lower court) plus any others found necessary by it from its knowledge of the testimony. Only in this way can an appropriate review function be performed.

Furthermore, we have some difficulty with the order of the court below. These appeals are heard by the lower court *de novo*. Act of April 9, 1929, P. L. 343, as amended, 72 P.S. §1104. In its order *nisi* the lower court, instead of entering judgment as required in such a case, simply "set aside" the Commonwealth's resettlement of the tax and reinstated the original settlement. In its final decree the court directed the entry of judgment in accordance with its prior opinion and order. We find this procedure inappropriate and ambiguous.

In all of these cases the court below must make a determination of the proper amount of tax due (if any) and interest (if any) and enter judgment accordingly. If, for any reason, the computations are difficult or cannot be made from the facts presented, the court may direct the parties to prepare a computation in accordance with the opinion and submit it to the court for the entry of judgment. But the court must enter a judgment for the amount of tax found to be

correct. See *Commonwealth v. Scott Paper Company,* 425 Pa. 444, 228 A. 2d 904 (1967).

Having disposed of these "procedural" issues and thus remanding the case as stated, we, nevertheless, are disposed to review the legal issues presented in' the hope that our action may assist in a final resolution of the case.

1. We turn to the question of the proper allocation of wages and salaries. The relevant provision of the act imposing franchise tax, Act of June 1, 1889, P. L. 420, §21, as amended by the Act of May 16, 1935, P. L. 184, §1, as amended, 72 P.S. §1871, provides: "The amount assignable to this Commonwealth of expenditures of the taxpayers for wages, salaries, commissions, or other compensation to its employes, shall be such expenditures for the taxable year as represents the wages, salaries, commissions, or other compensation of employes not chiefly situated at, connected with, or sent out from premises for the transaction of business maintained by the taxpayer outside the Commonwealth."

From this, the Commonwealth argues on behalf of what it calls a "residue" theory of allocation; while the taxpayer, admitting that the statutory language is broad, submits that no case has allocated amounts to Pennsylvania where there was not a positive identification with a Pennsylvania office. In the present context both parties point to a memorandum[2] of the De-

---

[2] The parties differ as to whether the memorandum reflects past practice under the statute (as the Commonwealth contends) or a change in such practice (as the taxpayer argues). This, too, is a factual matter which we do not decide; however, we do point out that the issue is not necessarily just a question of correcting past erroneous action of the taxing authorities as the Commonwealth indicates. If, indeed, a change has occurred, the repeated reenactments by the legislature of the statute may well fix the meaning of the act in accordance with a traditional interpretation. See *Commonwealth v. Sitkin's Junk Co.,* 412 Pa. 132, 194 A.

partment of Revenue, Bureau of Corporation Taxes, dealing with the proper method of allocation where employees reside and work in Pennsylvania, where the taxpayer has no office(s) in Pennsylvania and where the Pennsylvania employees are in some degree connected with an outside office of the taxpayer. The Commonwealth contends that it is necessary to weigh the quantum and extent of activities performed in Pennsylvania against the connection with the out-of-state office and if the former "overrides"[3] the latter, the compensation should be allocated to Pennsylvania. The taxpayer argues that the memorandum incorrectly interprets the statute in that some connection with a Pennsylvania office is required to allow allocation to this Commonwealth.

Although it is dangerous to generalize and although we recognize that specific cases may present unique variations of the problem, we feel that there are certain principles which do apply. We do not agree completely with either the Commonwealth or the taxpayer.

First, it bears repeating, as we have often stated, that the purpose of the allocation fractions is to provide a measure of corporate activity within the Commonwealth so that a proper share of the corporate value (for franchise tax) may be allocated to Pennsylvania. *Commonwealth v. Rieck Investment Corporation*, 419 Pa. 52, 213 A. 2d 277 (1965); *Commonwealth v. Lukens Steel Co.*, 402 Pa. 304, 167 A. 2d 142 (1961); *Commonwealth v. Koppers Co., Inc.*, 397 Pa. 523, 156 A. 2d 328 (1959). This underlying purpose is as much a part of the statutory scheme of apportionment as are the words of the statute themselves.

Second, in providing for a method of apportionment, a state is not restricted to any particular for-

---

2d 199 (1963), *Commonwealth v. Northern Metal Co.*, 416 Pa. 75, 204 A. 2d 467 (1964) (n.5).

[3] This is the Commonwealth's word.

mula but may select the one it deems most appropriate to its taxing policy as long as basic considerations of due process and equal protection are observed. *Butler Brothers v. McColgan*, 315 U.S. 501, 62 S. Ct. 701, 86 L. ed. 991 (1942), *Commonwealth v. Koppers*, supra. Thus, Pennsylvania has selected a three-fraction method of apportionment under which the compensation and receipts fractions are based upon an office or headquarters connection. It could just as well have chosen a compensation factor tied to work location of the payee and a receipts factor tied to destination of sales.[4] Undoubtedly, Pennsylvania, traditionally a manufacturing state, felt its tax policies were better served by the formula it selected rather than by approaches more relevant to a state in which consumption outweighed production. In any event it is not for us to review the wisdom of such policy decisions or to correct them if their contemporary application is less fruitful than in another day.

Third, variations in state apportionment policies may well produce tax effects which appear whimsical but which, legally, are perfectly acceptable as long as they do not transgress constitutional concepts of reasonableness. Thus, the interplay of apportionment factors of a number of states when applied to a corporation's income may result in state taxation of more than 100% of that income. See *Commonwealth v. South Philadelphia Terminal, Inc.*, 404 Pa. 293, 171 A. 2d 758 (1961) and *Commonwealth v. Koppers*, supra. Similarly, such interplay may result in taxation of less than 100% of the income (for obvious reasons such cases rarely, if ever, get to court). If a corporation with an office in state "X" sells its product from that

---

[4] See, for example, The Uniform Division of Income for Tax Purposes Act adopted by a number of states.

office to a Pennsylvania customer and state "X" allocates receipts from sales on a destination basis, neither Pennsylvania nor state "X" will include the receipts in the numerators of their respective receipts fractions. There is no more reason for a court to consider this significant than there is in the reverse situation (in fact, there is less reason since no constitutional problem arises from taxing too lightly).

Thus, when the Commonwealth, as here, argues that its resettlement allocating 2.8% of taxpayer's sales to Pennsylvania should be supported since 6.1% of all taxpayer's sales are made to Pennsylvania customers and since taxpayer wants to allocate only .005% of these sales to Pennsylvania, it argues irrelevantly. Sales made to Pennsylvania customers may well have proved a more desirable allocation to the Commonwealth in this case, but it is not the statutory criterion established by the franchise tax act. The criterion is "office connection", and the only question to be determined is what is the proper percentage of sales to be allocated on an office connection basis. It may well be, in a given case, that a company sells 100% of its product to Pennsylvania customers and yet allocates no sales receipts to Pennsylvania. This, too, depends upon the statutory language.

Fourth, subject only to the limitations imposed by the purpose of the allocation fractions as measures of corporate activity within the Commonwealth and to the precise application of the statutory formula, there is no reason why the Commonwealth's so-called "residue" theory of allocation is not otherwise proper. It is true that earlier cases, with one possible exception (noted below) appear to have relied on a positive Pennsylvania connection to support an allocation to this Commonwealth, e.g., *Commonwealth v. Bayuk Cigars, Inc.,* 345 Pa. 348, 28 A. 2d 134 (1942); but we did not rule

out a more literal approach to the statute. In a given factual situation where the negative statutory wording is appropriately applied, it may and should be.

The only case which may represent a deviation is *Commonwealth v. Minds Coal Mining Corporation*, 360 Pa. 7, 60 A. 2d 14 (1948). The issue was the receipts allocation of Minds, a West Virginia corporation, having its only office in Pennsylvania, which contracted with a New York sales agent to have the latter sell Minds' product. Sales made by the New York company were held to be allocable to Pennsylvania in computing Minds' tax because the New York premises were not premises maintained by Minds. However, the meaning of this case is made somewhat obscure by several factors: (1) the fact that Minds' only office was actually in Pennsylvania and (2) the partly confusing situation regarding the sales themselves. Although the lower court (whose opinion we adopted) went to some lengths to state that the sales in question were those from the New York company to customers and not from Minds to the New York company, the recited facts actually appear to belie this position.

This leads directly to more specific consideration of the issues here because the factual context is paramount. We return to the compensation allocation fraction. While it may be, in a particular case, that employees residing in Pennsylvania are actually connected with no business premises maintained by the employer (while it is difficult to imagine such a case, we have no intention of ruling it out), so that the statute's negative language would require allocation of their wages to Pennsylvania, such employees who are connected with an office outside Pennsylvania are not to have their wages allocated to Pennsylvania simply because they spend all of their time here. In other words, we cannot accept the Commonwealth's conten-

tion that we must weigh the extent of activity in Pennsylvania with the degree of the connection outside to. determine if the in-state presence "overrides" the out-of-state connection.[5]

The thrust of the statute, as taxpayer correctly argues, is to assign the wages to the place of control. See *Commonwealth v. R. S. Noonan, Inc.*, 419 Pa. 411, 213 A. 2d 787 (1965). If the employee is controlled or directed or supervised by or reports to an office outside Pennsylvania, his wages are to be assigned outside Pennsylvania because of this connection. If he is not or does not, there is no connection; and his wages are to be assigned to Pennsylvania. *Commonwealth v. Bayuk Cigars, Inc.*, supra, is illustrative. The employees there were all residents of other states and were constantly traveling within the areas outside of Pennsylvania assigned to them. They came to Pennsylvania only once a year to attend a sales meeting. The company's only office was in Pennsylvania. The court found no outside connection and did find the Pennsylvania connection sufficient to allow their wages to be assigned to Pennsylvania. This decision reflects accurately the concept of connection as used in the statute; just as Bayuk's outside employees were connected with a Pennsylvania office, so may Pennsylvania resident employees be connected with an outside office.

It is the connection which counts, not the weighing of in-and-out-of-state factors. Conceivably, as stated above, no connection at all may exist. In such a case the wages of Pennsylvania resident and working employees may be assigned to Pennsylvania. But, to illustrate the statutory purpose further, the wages of Ohio resident and working employees may not be allo-

---

[5] The phrases "situated at" and "sent out from" in the statute are more precise, are rarely troublesome and are not here involved.

cated to Pennsylvania just because the statutory language would allow it. In this latter case the statutory purpose forbids it; there would be no measure of corporate activity in Pennsylvania by including the wages of Ohio workers in the numerator of the fraction. It is at such a point that the "residue" concept and the statutory purpose meet.

We find no additional problem from use of the word "chiefly" in the statute. The word is one of comparison and is used to force an allocation to one place or another where like things may be compared— i.e., one office or another. Inherent in the use of the word is the presence of a connection with something; if there is no connection, there is no need to compare. But, it is not used to permit a comparison between unlike objects—i.e., an outside connection or a Pennsylvania residence. Since the residence is legally irrelevant, the comparison is meaningless.

2. When we turn to the gross receipts allocation fraction, we find basically similar statutory language: "The amount of the taxpayer's gross receipts from business assignable to this Commonwealth shall be, (1) the amount of its gross receipts for the taxable year except those negotiated or effected in behalf of the taxpayer by agents or agencies chiefly situated at, connected with, or sent out from premises for the transaction of business maintained by the taxpayer outside the Commonwealth. . . ."

The phrases "agents or agencies" has replaced "employees"; otherwise, the same views just set forth regarding the wages and salaries fraction are applicable. If an employee's wages are allocable outside Pennsylvania because of his connection with an outside office, then the receipts from sales negotiated or effected by that employee are similarly allocable outside of Pennsylvania.

Where an "agent" is involved and no allocable wages are present, the same determinations must be made. An independent agent or broker, of course, may be connected with an office of a taxpayer; if so, the receipts attributable to him are allocable to that office. On the other hand, an independent agent may not be directed or controlled in any way by or from an office of the taxpayer; in such a case, the receipts generated by him may be allocable to Pennsylvania if they thereby reflect corporate activity in Pennsylvania. If, however, they result from activity elsewhere (in or out of the United States), they are not allocable to Pennsylvania simply because of the residue theory of the statute.

We have pointed out recently that state taxation cannot reach income or property derived from business activity carried on by a foreign corporation outside a state's border. *Commonwealth v. Rieck Investment Corporation,* supra. This principle would be transgressed if Pennsylvania were allowed to increase the measure of its tax by allocating to itself receipts arising from activities of independent brokers located, for example, in Europe simply because the brokers were not connected with an office of the taxpayer located outside of Pennsylvania.

Several "side" issues involving the gross receipts of taxpayer also have been raised. Modern techniques of communication and transportation have transformed business methods sufficiently that traditional concepts of "negotiated or effected" may necessarily be inappropriate to determine all cases. Nevertheless, these two words remain the operative ones of the statute; and they must be applied in light of whatever facts appear in a particular case.

Thus, if the technique of selling presented involves an initial customer contact, a subsequent approval of

the customer and placement of him on the seller's list of customers, and continued placement of orders by the customer directly to a distribution center of the seller, a careful analysis must be made to discern where the significant selling actions occur. The initial contacts between customer and seller may actually involve the negotiation and effectuation of a long-continued series of sales if these contacts actually involve an agreement to buy and sell. Where, however, only a status (e.g., approved customer) is determined, it is clear that no sale is made; and subsequent events must be scrutinized. Somewhere in the relationship of buyer and seller something happens which brings about a sale; when it does, an allocable event occurs.

Finally, both parties seem to have some difficulty with the problem of who has the burden of proof in these tax cases. It is clear that the factual burden is on the party who appeals under §1104 of The Fiscal Code, 72 P.S. §1104. See *Commonwealth v. Equitable Gas Co.,* 80 Dauph. 89 (1963). This, however, is not the same as saying that a tax statute must be construed one way or another depending upon who appeals. As pointed out dozens of times, a taxing statute is to be strictly construed; and doubts as to its meaning must be resolved in favor of the taxpayer. *Commonwealth v. Rieck Investment Corporation,* supra. This does not exonerate a taxpayer from its factual burden, however, if it is the appellant.

The order of the court below is vacated and the case remanded for further proceedings consistent with this opinion.

CONCURRING OPINION BY MR. CHIEF JUSTICE BELL:

I concur in remanding the case, but disagree with several interpretations of the franchise tax Act of June 1, 1889, P. L. 420, §21, as amended, which are set forth in the majority Opinion.

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I agree that this litigation should be remanded to the lower court so that the statutory mandate can be observed. However, the very purpose for which this case is remanded, i.e., the compilation of findings of fact by the court below, demonstrates that this Court should not engage in an extensive discussion of matters not necessary for the disposition of complex litigation. It is my belief that appellate courts best function when their decisions are linked to the facts of the litigation. In the absence of this factual framework, a court is forced to enunciate abstract principles which may later be regretted when placed in a factual context. Furthermore, what now appears to be an issue in this case might become irrelevant to the final resolution of this case because either the lower court's factual findings resolve any dispute or the parties themselves decide to abandon a particular contention. This Court would thus have rendered a purely advisory opinion. For this reason I express no view on the various principles of law concerning the "non-procedural" issues in this case as propounded by the majority.

I must therefore dissent from that portion of the order here entered which requires the trial court to resolve the litigation consistent with the advisory opinion expressed by the majority. Since it is for the trial court to determine in the first instance the applicable legal principles in light of its factual findings, I believe that it should first frame the legal issues involved. Only then will this Court have a record adequate for review and I would postpone any resolution of the "non-procedural" issues until that time.

Mr. Justice MUSMANNO joins in this concurring and dissenting opinion.