Commonwealth *v.* Pincus Brothers, Inc., Appellant.

Argued May 22, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Alan J. Davis*, with him *Wolf, Block, Schorr & Solis-Cohen*, for appellant.

*Eugene J. Anastasio*, Deputy Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, September 19, 1973:

Pincus Brothers, Inc. [Pincus] is a Pennsylvania Corporation engaged in the manufacturing and sale of tailored men's suits. Its manufacturing plant and principal office are in Philadelphia. In its Corporate Net Income Tax Report for the year 1967, Pincus computed the tax due the Commonwealth of Pennsylvania as $12,-804.00. Subsequently, the Commonwealth's Board of Finance and Revenue [Board] determined sur a petition for review, that Pincus owed a total tax of $19,-

644.11. Pincus filed an appeal in the Commonwealth Court which ruled the Board correctly determined the tax due and entered judgment for the amount of tax [$19,644.11], plus interest and costs. Pincus appeals:

The facts disclosed by the record are these:

While Pincus' manufacturing plant and principal office are in Philadelphia, a showroom and sales office is maintained in New York City.[1] David Pincus, Secretary-Treasurer and Sales Manager of Pincus, is in charge of this New York City showroom-office and spends four and one-half days there each week. However, he resides in Philadelphia and also has an office there.

Eight full-time employees work in the New York City showroom-office. The wages paid these employees are reported to the State of New York for unemployment compensation. Pincus also employs fifteen individual salesmen who are assigned territories in Illinois, California, Rhode Island, North Carolina and Texas. These salesmen work under the supervision of David Pincus and contact him about selling problems. Sales meetings are held both in Philadelphia and New York City. The commissions due the salesmen plus their expense vouchers are paid from the Philadelphia office. Their earnings are reported to the Commonwealth of Pennsylvania for unemployment compensation purposes. All of the expenses incident to the maintenance of the New York City showroom-office are paid from the Philadelphia office.

During January, February and March, buyers from across the country visit Pincus' New York facility to examine displays and place orders for delivery during the "spring selling season." Similar visits are made in July, August and September to place orders for delivery

---

[1] About ninety per cent of all manufacturers of men's suits in the United States display their wares in this building.

during the "fall selling season." During these periods "at least a minimum of half" of the territorial salesmen employed by Pincus come to New York City to assist in the displays and in receiving orders. At all other times, these salesmen work in their assigned territories.

The orders obtained in New York City are reported to David Pincus for preliminary approval and he then forwards them to the office in Philadelphia. All of the orders obtained by the salesmen in their respective territories are forwarded directly to the Philadelphia office. All orders are processed in the Philadelphia office for approval of credit and "as to manufacturing" (i.e., the availability of the goods). No deliveries are made until the Philadelphia office gives final approval. All billings are from the Philadelphia office.

The issue in the case is the proper allocation of Pincus' net income between Pennsylvania and New York under the allocation formula provided by the Corporate Net Income Tax Act of 1935.[2]

The three fractions by which such allocation is made are the so-called: (1) "tangible property fraction"; (2) "wages and salaries fraction"; and (3) "gross receipts fraction". The tangible property fraction is not in dispute. Nor are the denominators of the wages and salaries fraction and gross receipts fraction. In contention are the numerators of the wages and salaries fraction and the gross receipts fraction.

In its 1967 Corporate Net Income Tax Return, Pincus reported $3,989,819 in wages, salaries and commissions which became the denominator of the wages and salaries fraction. Excluded from the numerator was the

---

[2] Act of May 16, 1935, P. L. 208, as amended, 72 P.S. §3420(a) et seq. The 1935 Act was repealed by the Tax Reform Act of 1971, Act of March 4, 1971, P. L. 6, No. 2, art. IV, §411, 72 P.S. §7411, because the 1971 Act completely revises the provisions of the Corporate Net Income Tax. [See 72 P.S. §7412].

salary paid to David Pincus and the commissions paid to the territorial salesmen.[3]

With regard to gross receipts, Pincus reported a total of $10,919,319 which became the denominator of the gross receipts fraction. It excluded from this numerator $9,000,000 in gross receipts which it contends resulted from sales negotiated and effected by David Pincus and the territorial salesmen.[4]

By this computation, Pincus reported corporate net income tax due in the amount of $12,804.00.

On petition for review, the Board ruled the numerator of the wages and salaries fraction should include the salary paid to David Pincus and the commissions paid the salesmen, and that the numerator of the gross receipts fraction should include the receipts from sales made by the salesmen. Pincus challenged this ruling unsuccessfully in the Commonwealth Court and renews the challenge here.

Under Section 2, subsection (c)(3), 72 P.S. §3420b-2(c)(3) of the Corporate Net Income Tax Act of 1935, supra, extant in 1967, all compensation paid to and receipts from sales generated by employees "chiefly situated at, connected with, or sent out from, premises for the transaction of business maintained by the corporation outside of the Commonwealth" are specifically excluded from both the numerator of the wages and salaries fraction and the gross receipts fraction. See *Commonwealth v. Continental Rubber Works*, 347 Pa. 514, 32 A. 2d 878 (1943). The issue, therefore, hinges upon a

---

[3] Pincus also excluded $134,476.90, or the amount of wages paid to the eight full-time employees in the New York showroom-office. The Commonwealth concedes this expenditure was correctly excluded from the numerator.

[4] It appears Pincus actually excluded from the numerator all gross receipts from sales to Pennsylvania customers. It is now conceded this was incorrect. See *Commonwealth v. General Foods Corporation*, 429 Pa. 266, 239 A. 2d 359 (1968).

determination of whether David Pincus and the territorial salesmen are "chiefly situated at, connected with, or sent out from" the Pincus office in Philadelphia or the corporation's facility in New York City. The Commonwealth Court concluded that these individuals were chiefly situated at the Philadelphia office, but, in our view, this conclusion is not supported either by the record or previous decisions of this Court.

No decision of this Court within our knowledge has heretofore construed the language "chiefly situated at, connected with, or sent out from" contained in the Corporate Net Income Tax Act of 1935; however, we have in several instances construed the meaning of identical language in the Act of June 1, 1889, P. L. 420, §21, as amended, 72 P.S. §1871, imposing a franchise tax on foreign corporations doing business in Pennsylvania. For example, see *Commonwealth v. General Foods Corporation*, 442 Pa. 273, 277 A. 2d 138 (1971) ; *Commonwealth v. General Foods Corporation*, 429 Pa. 266, 239 A. 2d 359 (1968) ; *Commonwealth v. R. S. Noonan, Inc.*, 419 Pa. 411, 213 A. 2d 787 (1965). In these cases, we ruled that employees are "chiefly situated" at the business premises from which they are controlled; and in *Commonwealth v. General Foods Corporation*, 429 Pa. 266, supra, at page 278, we said in relevant part : "[I]f the employee is controlled or directed or supervised by or reports to an office outside Pennsylvania . . ., he is controlled by that office."

It appears clear to us that David Pincus is "chiefly situated" at Pincus' New York City facility and his salary should be assigned outside of Pennsylvania. He spends four and one-half days each week at this business facility and directs the entire sales program of the corporation from there. A substantial portion of Pincus' total sales are negotiated right on the premises. The argument of the Commonwealth that this New York facility is merely a "showroom" is unpersuasive.

As far as the commissions paid to the territorial salesmen are concerned, since these salesmen are at least supervised in their work by David Pincus from the New York City facility, these individuals must be considered as "chiefly situated" at the New York City facility for the purposes of the Act of 1935, supra, and their commissions assigned outside of Pennsylvania. Likewise, the receipts of the sales generated by these salesmen.[5] The fact that the sales are finalized in the Philadelphia office is not controlling. Cf. *Commonwealth v. General Foods Corporation,* 429 Pa. 266, supra. See also *Commonwealth v. The Minds Coal Mining Corp.,* 360 Pa. 7, 60 A. 2d 14 (1948); *Commonwealth v. Continental Rubber Works,* supra.

The judgment entered below is vacated and the record is remanded for further proceedings consistent with this opinion.

---

[5] The record before us is unclear as to the total receipts from these sales and the trial court made no finding in this regard. In his testimony, David Pincus approximated the percentage of Pincus' sales negotiated through the New York City office, but no corporate records appear to substantiate this. The burden of proof as to this is on Pincus. See *Commonwealth v. General Foods Corporation,* 429 Pa. 266, supra.